UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFRED KING, | No. 2:13-cv-2010 MCE CKD P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al., | |
| Defendants. | |

Plaintiff, a state prisoner proceeding pro se, has filed this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on the First Amended Complaint filed January 10, 2014, in which plaintiff alleges that officials at California State Prison-Solano transferred him to Avenal State Prison ("ASP"), putting him at risk for Valley Fever, and that he contracted the disease after an ASP official refused to transfer him elsewhere. (ECF No. 9 ("FAC").) Before the court is defendants' June 30, 2014 motion for summary judgment on the ground that plaintiff has failed to exhaust administrative remedies. (ECF No. 21.) Plaintiff has opposed the motion (ECF Nos. 23, 25)[1], and defendants have filed a reply. (ECF No. 24.) For the reasons set forth below, the

---

[1] After the court's order directing plaintiff to file an opposition, and plaintiff's opposition, apparently "crossed in the mail" (see ECF Nos. 22, 23), plaintiff filed a second opposition (ECF

1

undersigned will recommend that defendants' motion be granted.

I. <u>Exhaustion Requirement</u>

Section 1997(e)(a) of Title 42 of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a) (also known as the Prison Litigation Reform Act ("PLRA")). A prisoner must exhaust his administrative remedies before he commences suit. <u>McKinney v. Carey</u>, 311 F.3d 1198, 1199–1201 (9th Cir. 2002). Failure to comply with the PLRA's exhaustion requirement is an affirmative defense that must be raised and proved by the defendant. <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007). In the Ninth Circuit, a defendant may raise the issue of administrative exhaustion in either (1) a motion to dismiss pursuant to Rule 12(b)(6), in the rare event the failure to exhaust is clear on the face of the complaint, or (2) a motion for summary judgment. <u>Albino v. Baca</u>, 747 F.3d 1162, 1169 (9th Cir. 2014) (<u>en banc</u>).

The State of California provides its prisoners and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). The appeals office for each prison receives all inmate grievances (known as appeals or CDCR form 602s) submitted by inmates at the institutional level. (Donaldson Decl. ¶ 2, ECF No. 21-7.)

There are three formal levels of appeal review. Cal. Code Regs. tit. 15, § 3084.5. In order to be timely, an appeal must be submitted within thirty calendar days of the action or decision being appealed. Cal. Code Regs. tit. 15, § 3084.8(b). The inmate begins by submitting his grievance at the first formal level, which is addressed by the Division Head or his/her designee. (Donaldson Decl. ¶ 3.) If the inmate is not satisfied with the first-level response, he may submit the appeal for a second level of review. (<u>Id.</u>) The second-level review is conducted by the Institution Head or a designee. (<u>Id.</u>) If the inmate is not satisfied with the second-level response,

---

No. 25). The court will consider these as one pleading on summary judgment.

he may submit it to Sacramento for third-level review. (Id.) This third-level review constitutes the CDCR Secretary's decision on appeal, and completes the exhaustion process. (Id.) Once the inmate receives the response to the Third Level Review, he has exhausted administrative remedies. (Id.)

In California, prison appeals related to medical care are handled under the same regulatory framework, but separately from non-medical appeals. First- and second-level medical appeals are processed by medical staff located at the respective institutions, while third-level appeals are processed by the Inmate Correspondence & Appeals Branch staff located at California Health Care Services in Sacramento, California. (Robinson Decl. ¶ 2-4, ECF No. 21-10.)

An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 84 (2006). When an inmate's administrative grievance is improperly rejected on procedural grounds, however, exhaustion may be excused as "effectively unavailable." Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010); see also Nunez v. Duncan, 591 F.3d 1217, 1224–26 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012) (exhaustion excused where futile); Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available).

II. Facts

In his verified complaint, plaintiff alleges as follows[2]: In early April 2012, he appeared before an Institution Classification Committee ("ICC") at California State Prison-Solano[3] for review and transfer. (FAC at 9.) Defendants Ferguson and Cappel were ICC members in attendance. (Id.) Plaintiff alleges that, per regulations allowing him to express a preference for a transfer location, he told defendants that he had a "chronic lung condition" and was in the

---

[2] When a complaint is verified under penalty of perjury, it has the effect of an affidavit to oppose summary judgment "to the extent it is 'based on personal knowledge' and 'sets forth specific facts admissible in evidence.'" Keenan v. Hall, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996).

[3] Plaintiff refers to this institution as Solano State Prison.

3

prison's "chronic care program." (Id.) Despite this, the ICC opted to transfer him to Avenal State Prison. (Id.) Plaintiff asserts that this decision was "in direct contravention to a state wide CDCR memo issued in 2006 . . . prohibiting my placement at any Central Valley Institution due to my 'High Risk' health classification and susceptibility to the lethal Coccidiomycosis (Valley Fever) disease endemic to said area." (Id. at 5-6.)

Plaintiff continues:

> Upon my arrival at Avenal State Prison, I learned of the high incidence of Valley Fever, making the facility 'ground zero' for reported cases of Valley Fever statewide! Therefore, I again sought immediate transfer . . .  Having been placed in 'harms way,' I immediately went to see my correctional counselor (CCI), a Mr. Smith.  I showed Mr. Smith the rules, written policies and procedures which called for my prompt removal/transfer out of the Avenal prison facility.  Mr. Smith . . . agreed to put me up for transfer ASAP, and he did so.  However, . . . on 5-11-12, defendant L. Williams, Classification Staff Representative, decided against my transfer, thereby violating established CDCR Health Care Services policy and procedure.  Consequently, I was 'retained' at Avenal State Prison where, shortly thereafter, I contracted Valley Fever and almost died[.]

(Id. at 6.)

Plaintiff was incarcerated at CSP-Solano from May 24, 2007 through May 3, 2011.[4] (Estrella Decl. ¶ 6, ECF No. 21-4.) From May 4, 2011 through October 31, 2012, he was housed at ASP. (Donaldson Decl. ¶ 6, ECF No. 21-7.) As noted above, plaintiff alleges that Williams refused to transfer him out of ASP on May 11, 2012. Plaintiff was transferred to San Quentin on November 6, 2012 and remains incarcerated there. (Davis Decl. 6, ECF No. 21-9.)

CSP-Solano Appeals

While housed at CSP-Solano between 2007 and 2011, plaintiff filed several administrative appeals. In August 2007, he requested to see a specialist for his swollen prostate. (Fleichman Decl. ¶ 6(d), ECF No. 21-5.) In February 2008, he requested a referral to Urology. (Id., ¶ 6(c).) In May 2008, he filed an appeal concerning treatment of his leg and pain medication. (Id., ¶ 6(b).

---

[4] Defendants assert that plaintiff incorrectly states that the ICC meeting at CSP-Solano took place in April 2012. Their records reflect that he left CSP-Solano in May 2011. (See ECF No. 21-1 at 5, n. 2.)

1  In November 2010, he sought to have a cavity in his tooth filled.  (Id., ¶ 6(a).)

2  After he left CSP-Solano in May 2011, plaintiff continued to file administrative appeals at CSP-Solano.  In July 2011, he filed an appeal concerning lost property.  (Estrella Decl. ¶ 7(b), ECF No. 21-4.)  In August 2011, he filed an appeal claiming he had been improperly disciplined for an infraction.  (Id., ¶ 7(a).)  None of the claims plaintiff filed at CSP-Solano concerned his transfer to ASP and/ or risk of contracting Valley Fever.  (Id., ¶¶ 6-7.)

ASP Appeals

Plaintiff continued to file administrative appeals while housed at ASP.

On June 27, 2012, he filed an appeal requesting that a pill be prescribed for him.  (Kiester Decl., Ex. B, ECF No. 21-6 at 11.)  On July 10, 2012, it was rejected on the ground that plaintiff had "exceed the allowable number of appeals filed in a 14 calendar day period" pursuant to Cal. Code Regs. tit. 15 § 3084.6(b)(3).  (Id. at 10.)

Also on June 27, 2012, plaintiff filed an appeal requesting a renewal of his lower bunk chrono.  (Id. at 15.)  On June 24, 2012, this appeal was partially granted at the First Level of Review.  (Id. at 14.)

On August 12, 2012, plaintiff filed an appeal requesting diagnostic testing for heart disease.  (Id. at 8.)  On September 17, 2012, the First Level Reviewer described plaintiff's recent medical history and laboratory tests and denied his appeal.  (Id. at 6-7.)

None of the appeals filed at ASP concerned plaintiff's transfer from CSP-Solano or the May 2012 decision to retain him at ASP.  (Kiester Decl. ¶ 6; see id., Ex. D (record of plaintiff's appeal history).)

San Quentin Appeals

Plaintiff arrived at San Quentin on November 6, 2012.  On November 9, 2012, he submitted an appeal seeking "compensation for medical condition" and stating that he was "transferred to Avenal despite chronic respiratory problems and misdiagnosed about having Valley Fever."  (Almares Decl., Ex. A, ECF No. 21-8 at 5.)  On November 15, 2012, plaintiff's appeal was screened out as untimely, as it was not submitted within thirty days of the challenged action.  (Id. at 7.)

5

1  On November 22, 2012, plaintiff filed a separate appeal regarding "the continued
2  treatment I am receiving as a result of contracting Valley Fever." (Almares Dec., Ex. B, ECF No.
3  21-8 at 9.) He requested "that I be seen by a doctor and my current medical needs be addressed"
4  and to receive monetary damages "to allow me to pay future medical expenses upon release."
5  (Id.)

6  On December 6, 2012, the appeal was partially granted in that plaintiff was seen by the
7  doctor at San Quentin and his "medical issues were addressed." (Id. at 13.)

8  On December 20, 2012, plaintiff appealed the First Level Response, citing "[t]he fact that
9  I contracted Valley Fever at a known hot spot for the disease and after I brought to the attention
10  of staff I should not have been housed there due to my medical needs." (Id. at 10.) He sought a
11  settlement conference and monetary damages. (Id.)

12  On January 9, 2013, plaintiff's Second Level Appeal was partially granted, in that plaintiff
13  "continue[d] to receive treatment as medically necessary and you are encouraged to try to work
14  with San Quentin State Prison Medical Staff as we . . . continue to address your medical
15  problems." (Id. at 15.)

16  On January 25, 2013, plaintiff appealed the Second Level Response, again asking for a
17  settlement conference and monetary support. "The very fact that I have Valley Fever is due to
18  being placed at Avenal State Prison, which is known by the California Department of Corrections
19  to be a Valley Fever hot spot. Plain and simple I should not have been sent there . . . Then after
20  arriving there and learning I was at ground zero for Valley Fever, and asking to be transferred, I
21  was denied. Subsequently I became very ill . . . [and] will be effected [sic] for the rest of my
22  life." (Id. at 12.)

23  On July 30, 2013, plaintiff's Third Level Appeal was denied as to the following issues:
24  plaintiff's request to be seen by a doctor for his "current medical needs" and his request for
25  monetary damages. (Id.) Noting plaintiff's ongoing medical care and the unavailability of
26  monetary compensation, the reviewer concluded that no further intervention was necessary. (Id.
27  at 16-17.) "This decision exhausts your administrative remedies." (Id. at 16.)

28  The instant action was commenced on September 26, 2013. (ECF No. 1.)

III. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . ." Fed. R. Civ. P. 56(c)(1)(A).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

In a summary judgment motion for failure to exhaust administrative remedies, the defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino, 747 F.3d at 1172.  If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id.  The ultimate burden of proof remains with defendants, however.  Id.  "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id. at 1166.

IV. Analysis

The events giving rise to this action took place on or before May 2011, when CSP-Solano ICC members Ferguson and Cappel put plaintiff up for transfer to ASP despite his chronic lung condition; and in May 2012, when ASP official Williams refused to transfer plaintiff out of ASP. The FAC makes clear that by May 2012, plaintiff was aware he had been "placed in harm's way"

7

at ASP due to the risk of Valley Fever, and "immediately" asked to be transferred elsewhere. (FAC at 6.)

California regulations require that appeals be submitted at the institution where the disputed event occurred, so that the officials reviewing the appeal have "signature authority for the approval or disapproval of [the] appeal response." Cal. Code Regs tit. 15 §§ 3084(f), 3084.2(c). While plaintiff filed multiple 602 appeals at both CSP-Solano and ASP, none of his appeals at either prison concerned the events giving rise to this action.

Rather, plaintiff first appealed his transfer to ASP to San Quentin officials in November 2012. After this appeal was screened out as untimely, plaintiff continued to seek monetary compensation from San Quentin officials in 2012 and 2013. Characterizing plaintiff's appeal as a request for medical treatment, San Quentin officials partially granted it by providing such treatment, and otherwise denied the appeal through all three levels of review.

On this record, the undersigned finds that defendants have met their initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy" as to the events giving rise to this action. Albino, 747 F.3d at 1172. Though plaintiff complained about his transfer to ASP in his San Quentin appeals, these were submitted to the wrong prison long after the thirty-day deadline had expired. Indeed, as a practical matter, San Quentin officials could do nothing about long-past events at two different prisons. Thus plaintiff can only be said to have "exhausted his remedies" concerning his medical care at San Quentin, which is not the subject of this action.

Defendants having met their initial burden, the burden shifts to plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino, 747 F.3d at 1172.

In his opposition to the motion, plaintiff concedes that he "started the appeals process" after being transferred to San Quentin. (ECF No. 23 at 3.) While at ASP, he asserts, he "had to prepare for" a Board of Prison Terms appearance, and "then contracted valley fever." (Id.) In the second part of his opposition, plaintiff explains:

8

> [After receiving notice that I would not be transferred out of ASP per defendant Williams], I had to prepare for a Board of Prison Terms scheduled appearance which entails gathering letters of support from community leaders[] and business people, a place for myself if paroled in transitional housing, job offers, vocation training certificates etc., and psychological evaluations.
>
> Shortly, after appearing before the Board of Prison Terms, I contracted Valley Fever, and became very ill.
>
> . . .
>
> . . . [T]here was alot going on in here with me, Board of Prison Hearing appearance, death in the family[,] involvement in two prison riots, already not in the best of health, then I contract Valley Fever.
>
> Then I was transferred to San Quentin . . .
>
> [F]inally I gathered myself, and filed and exhausted my in-house appeal regarding the placement at Avenal State Prison.

(ECF No. 25 at 2-3.)

While the court is sympathetic to the fact that plaintiff contracted a serious illness at ASP, his claim that he was too sick and/or busy to file an appeal while housed there is belied by his filing of three separate appeals at ASP during the summer of 2012, not long after he became aware of Williams' decision. On this record, plaintiff has not created a genuine dispute of fact as to whether administrative remedies were "effectively unavailable" to him in the period following defendants' decisions.

Based on the foregoing, the undersigned concludes that defendants should be granted summary judgment due to plaintiff's failure to exhaust administrative remedies.

Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment for failure to exhaust administrative remedies (ECF No. 21) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are

9

1  advised that failure to file objections within the specified time may waive the right to appeal the
2  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
3  Dated:  November 7, 2014

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

10  2 / king2010.sj_ex